FRANCISCO PACHECO, Plaintiff and Appellant, *v.* PLAZUELA
SUGAR Co., Defendant and Appellee.

No. 7758.   Argued May 9, 1939.—Decided April 18, 1940.

*Luis Mercader* for appellant.   *G. Zeno Sama* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Francisco Pacheco, in an action to establish the nonexistence of a servitude, alleged that he was the owner of an undivided interest in a parcel of land in the Islote barrio, Municipality of Arecibo, described as having an area of five cuerdas, bounded on the north by the maritime zone, on the south and west by Matilde Rojas and on the east by Antonia Campos.   He also alleged that the defendant, Plazuela Sugar Company, the owner of a private railroad, had, without plaintiff's consent, laid its track from east to west across the said land and was crossing the same at intervals with its trains.

Defendant denied that it had laid its tracks across the land described in the complaint; and that it was crossing the same with its trains.   It alleged that its tracks were laid on

its own property—a strip of land acquired by purchase from Matilde Rojas, December 20, 1918—situated in the Islote barrio, Arecibo, measuring 326 meters in length by 8 meters in width—2608 square meters—bounded on the north and south by the property from which it had been segregated belonging at the time to Matilde Rojas; on the east by lands of Bonocio Campos, and on the west by Blas Rojas. Defendant also alleged that Matilde Rojas subsequently on March 12, 1925, segregated and sold to Cruz, Francisco, María, and Antonio Pacheco the parcel described in the complaint, which lies on both sides of the strip previously sold to defendant; but that this fact was not mentioned in the deed of conveyance to the Pachecos, who, however, knew that the strip had been for many years the property of defendant. Defendant denied plaintiff's averment that he had requested defendant to discontinue the operation of its trains across his land. It alleged that plaintiff could not have requested the removal of defendant's tracks from its own property which had been in the quiet, public, and peaceful possession of defendant in good faith and with just title for more than 18 years.

Plaintiff-appellant submits that the district court erred:

In admitting the deed executed by Matilde Rojas in 1918, and recorded in 1937, after the Pacheco deed to the 5 cuerdas had been recorded in 1925.

In admitting in evidence a plat said to have been made by witness Julio Rodríguez in 1937.

In holding that it was incumbent on plaintiff to establish his ownership of an undivided interest in the strip of land alleged to be the property of defendant.

In finding, contrary to the provisions of section 1362 of the Civil Code (1930 ed.), that defendant was the owner of the strip occupied by the track, notwithstanding defendant's averment that the said strip was an integral part of the 5 cuerdas, the deed to which had been recorded before defendant's deed was registered.

In finding that plaintiff was not a third person because he was a grandson of Matilde Rojas, because defendant's deed was of a prior date and because the railroad track was in plain view when plaintiff and his brothers bought the 5 cuerdas.

In its interpretation of the doctrine as to the jurisprudential third person, and in the application thereof to the facts in the instant case.

In disregarding the doctrine of *Martínez* v. *Central Cambalache,* 48 P.R.R. 208, affirmed in 86 F. (2d) 37, and in applying the doctrine of actual notice laid down in *Colón* v. *Plazuela Sugar Co.,* 47 P.R.R. 827, discarded by the *Martínez* case.

In weighing the evidence, in forming opinion contrary to law, and in not awarding costs to plaintiff.

██ Before the plat mentioned in the second assignment was offered in evidence, Julio Rodríguez, a transport engineer, had testified, without objection on the part of plaintiff, substantially as follows:

Witness had worked for the Plazuela Sugar Co. for more than 34 years. He knew Francisco Pacheco and his brothers. They had a property of five cuerdas in Barrio Islote, Arecibo, bounded on the north, by the maritime zone; on the west, by Matilde Rojas, and on the east, by Antonia Campos. Witness knew the property because he frequently passed the place and because it was in the middle of the Matilde Rojas property. The five cuerdas were traversed from east to west by a strip 326 meters in length by 8 meters in width, the property of Plazuela Sugar Co., and by the tracks of the Plazuela Sugar Co. The tracks had been there since 1908. The Plazuela Sugar Co. had purchased the strip from Matilde Rojas in 1918 for $400. The strip was bounded on the south by Matilde Rojas; on the north by Matilde Rojas; on the east by Blas Rojas, and on the west by Bonocio Campos Primero. The Pacheco property was some fifty or sixty meters in width. The Plazuela strip was 326 meters in length. It had been in the possession of Plazuela Sugar Co. since 1907 and had remained in the possession of the Plazuela Sugar Co. since 1918. The Plazuela Sugar Co. had never been disturbed in its possession. Witness had laid the tracks over that strip of land. Witness held a license as transport engineer from the Government of Puerto Rico. The 5-cuerda parcel was undivided, although the Pachecos had an understanding among themselves; each of them had a piece. The 5-cuerda parcel was traversed by the Plazuela Sugar Co. strip. The Pacheco parcel lay on both sides of the strip. The strip, at the time of the trial, was bounded on the north by Diego Campos, the Pacheco brothers, Bonocio Campos Segundo, Antonia Campos, Francisca Campos, and Antonia Campos Rojas;

on the south, Emeteria Campos, the Pacheco brothers, Bonocio Campos Segundo, Antonia Campos, Francisca Campos, and Antonia Campos Rojas; on the east by Blas Rojas; and on the west by Bonocio Campos Primero.

Witness then identified a plat as having been made by him showing the strip of land belonging to the Plazuela Sugar Company, the Pacheco property, and all of that part of the property which had belonged to Matilde Rojas. Defendant offered the plat in evidence as showing the location of the property. Plaintiff objected on the ground that the plat was connected with the deed of 1918 recorded in 1937 when plaintiff and his brothers were owners of the 5-cuerda parcel, as shown by the testimony of the witness who had made the plat. The judge said that he would admit the plat for the sole purpose of illustrating the location of the strip of land, as described by the witness, not for the purpose of determinig any question of title. In this we find no error. In any event, the plat added nothing to the testimony already admitted without objection and the error, if any, was harmless.

█ Section 1362 of the Civil Code (1930 ed.) reads as follows:

"If the same thing should have been sold to different vendees, the ownership shall be transferred to the person who may have first taken possession thereof in good faith, if it should be personal property.

"Should it be real property, it shall belong to the person acquiring it who first recorded it in the registry.

"Should there be no entry, the property shall belong to the person who first took possession of it in good faith, and, in the absence thereof, to the person who presents the oldest title, provided there is good faith."

█ For the purposes of this opinion it may be conceded that in the instant case there was a double sale of the strip purchased by the Plazuela Sugar Co. in 1918.

The Pacheco brothers, for some time prior to the date of their purchase of the 5 cuerdas in 1925, had cultivated the

land. They had actual knowledge of the fact that the rail-road tracks of the Plazuela Sugar Co. crossed the property.

In *Colón* v. *Plazuela Sugar Company*, 47 P.R.R. 827, 834, this court said:

"The view maintained by the Supreme Court of Spain seems to us to be just and reasonable, as it conforms to the realities of life and construes with a certain flexibility the provisions of the Mortgage Law, without violating the principles upon which the same is founded. We agree with Mr. Morell that an apparent sign of servitude does not always mean that the servitude has been legally constituted, since it may be based upon mere tolerance. But we think that such an apparent sign is sufficient to put upon inquiry anyone who attempts to deal with the alleged servient tenement, in order that he should act with caution and try to cerify the true situation. The inquiry would be a very simple and easy one, because even in a case where the owner of the servient tenement should conceal the information, the latter would not be hidden by the owner of the dominant estate, who, on the other hand, would be precluded from impugning his own acts, should he refuse to reveal the truth.

. . . . . . . . . . .

"There is no doubt that the rails laid in the form of a track upon the property ostensibly show the passage over the same of locomotives. Do these rails constitute an apparent sign of the prob-able existence of a servitude? We think so. Irrespective of pre-scription and the elements which unite in giving it life, on which point we do not wish to advance any ruling, those rails could only be there either by reason of the consent or mere tolerance on the part of the owner of the servient tenement, or by virtue of a title. Now, if these are the facts, if this is the palpable reality for anyone who were to entertain the purpose of acquiring the immovable, does it not seem natural and reasonable that he should try to verify the truth before closing the deal?

"The American decisions hold that a purchaser of real estate which is subject to such an easement as is apparent upon ordinary inspection of the premises is charged with notice thereof. And it considers as sound the rule to the effect that visible signs indicating the servitude, or actual knowledge of some fact which indicates its existence, generally put the purchaser upon inquiry; and where no inquiry is carried out by him it is to be concluded that, had an inquiry been made, it would have developed the truth. Notes, 41 A.L.R. 1442; 74 A.L.R. 1250."

We do not find that the doctrine of the *Colón* case was discarded in *Martínez* v. *Central Cambalache, supra.* It was followed and re-affirmed in *Félix del Llano & Co.* v. *Plazuela Sugar Co.,* 55 P.R.R. 567.

The first two paragraphs of the headnotes to *Quintana* v. *La Capital de Puerto Rico,* 51 P.R.R. 103, read as follows:

"A person who buys from one who according to the state of the registry has a right to sell, with knowledge of a prior unrecorded sale, is not a *bona fide* purchaser.

"One who buys with knowledge of a prior outstanding sale and title in another cannot defeat him by getting a deed and recording before that other, under section 1362 of the Civil Code (1930 ed.)."

More than thirty years ago in *Ramos* v. *Orcasitas,* 14 P.R.R. 65, 78, this court, speaking through Mr. Justice Figueras, said:

"It is true that Q. Mucius Scaevola in his *Jurisprudencia del Código Civil* says: 'That without an honest intention, the prize awarded by the provisions of article 1473 of the Civil Code to the first of two purchasers of the same realty who reaches the registry of property, cannot be obtained.'

"We respect that opinion because it is moral, but it does not appear from the record herein that those who first reached the registry in this case were not acting with honest intentions."

From the opinion of the court in *Yee* v. *Frank L. Strong Mach. Co.,* 37 Philippine 644, 648, 651, we take the following extract:

"It has been suggested that since the provisions of article 1473 of the Civil Code require 'good faith,' in express terms, in relation to 'possession' and 'title,' but contain no express requirement as to 'good faith' in relation to the 'inscription' of the property in the registry, it must be presumed that good faith is not an essential requisite of registration in order that it may have the effect contemplated in this article. We cannot agree with this contention. It could not have been the intention of the legislator to base the preferential right secured under this article of the code upon an inscription of title in bad faith. Such an interpretation placed upon the language of this section would open wide the door to fraud and

collusion. The public records cannot be converted into instruments of fraud and oppression by one who secures an inscription therein in bad faith. The force and effect given by law to an inscription in a public record presupposes the good faith of him who enters such inscription; and rights created by statute, which are predicated upon an inscription in a public registry, do not and cannot accrue under an inscription 'in bad faith,' to the benefit of the person who thus makes the inscription.

"Construing the second paragraph of this article of the code, the Supreme Court of Spain held in its *sentencia* of the 13th of May, 1908, that:

" 'This rule is always to be understood on the basis of the good faith mentioned in the first paragraph; therefore, it having been found that the second purchasers who record their purchase had knowledge of the previous sale, the question is to be decided in accordance with the following paragraph.' (Note 2, art. 1473, Civ. Code, Medina and Marañon (1911) edition.)

" 'Although article 1473, in its second paragraph, provides that the title of conveyance of ownership of the real property that is first recorded in the registry shall have preference, this provision must always be understood on the basis of the good faith mentioned in the first paragraph; the legislator could not have wished to strike it out and to sanction *bad faith,* just to comply with a mere formality which, in given cases, does not obtain even in real disputes between third persons.' (Note 2, Art. 1473, Civ. Code, issued by the publishers of the *La Revista de los Tribunales,* 13th edition.)

"One who purchases real estate with knowledge of a defect or lack of title in his vendor cannot claim that he has acquired title thereto in good faith as against the true owner of the land or of an interest therein; and the same rule must be applied to one who has knowledge of fact which should have put him upon such inquiry and investigation as might be necessary to acquaint him with the defects in the title of his vendor. A purchaser cannot close his eyes to facts which should put a reasonable man upon his guard, and then claim that he acted in good faith under the belief that there was no defect in the title of the vendor. His mere refusal to believe that such defect exists, or his wilful closing of his eyes to the possibility of the existence of a defect in his vendor's title, will not make him an innocent purchaser for value, if it afterwards develops that the title was in fact defective, and it appears that he

had such notice of the defect as would have led to its discovery had he acted with that measure or precaution which may reasonably be required of a prudent man in a like situation. Good faith, or the lack of it, is in its last analysis a question of intention; but in ascertaining the intention by which one is actuated on a given occasion, we are necessarily controlled by the evidence as to the conduct and outward acts by which alone the inward motive may, with safety, be determined. So it is that 'the honesty of intention,' 'the honest lawful intent,' which constitutes good faith implies a 'freedom from knowledge and circumstances which ought to put a person on inquiry,' and so it is that proof of such knowledge overcomes the presumption of good faith in which the courts always indulge in the absence of proof to the contrary. 'Good faith, or the want of it, is not a visible, tangible fact that can be seen or touched, but rather a state or condition of mind which can only be judged of by actual or fancied tokens or signs.' (Authorities).''

Francisco Pacheco was put upon inquiry by the existence of the Plazuela Sugar Company's railroad tracks on the land at the time of his purchase. He could not close his eyes to things that would strike the eye of the most casual observer, and thereafter successfully invoke the second paragraph of section 1362 of the Civil Code to defeat the Plazuela Sugar Company's title to the land on which its tracks were laid. No purchaser of land which has been previously sold, who is not also an innocent purchaser, can take shelter behind the letter of the law.

The judgment appealed from must be affirmed.